Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
Morgan L. Patterson (DE Bar No. 5388)
Nicholas T. Verna (DE Bar No. 6082)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: maward@wcsr.com
E-mail: erjohnson@wcsr.com
E-mail: mpatterson@wcsr.com
E-mail: nverna@wcsr.com

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SCOUT MEDIA, INC., et al.,[1] | ) | Case No. 16-13369-MEW |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE
DEBTORS TO PAY CERTAIN PREPETITION TAXES AND FEES**

Scout Media, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number are: Scout Media Holdings, Inc. (1936), Scout Media, Inc. (1438), FTFS Acquisition, LLC (7230), and Scout.com, LLC (3269). The location of the Debtors' headquarters and the Debtors' service address is 122 West 26th Street, Fifth Floor, New York, NY 10036.

proposed counsel, hereby move (the "Motion") for the entry of an interim order, substantially in the form attached hereto as <u>Exhibit A</u> (the "Proposed Interim Order"), and a final order, substantially in the form attached hereto as <u>Exhibit B</u> (the "Proposed Final Order"), authorizing the Debtors to remit and pay franchise, unemployment, and other miscellaneous taxes and business license and other similar fees and assessments. In support of this Motion, the Debtors respectfully state as follows:

**Jurisdiction**

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u> <u>seq.</u> (the "Bankruptcy Code").

**Introduction**[2]

4. On December 1, 2016, an involuntary bankruptcy petition was

---

[2] The facts and circumstances supporting this Motion are set forth in the Declaration of Craig Amazeen in Support of Debtors' Chapter 11 Petitions and First Day Motions (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used herein but not defined herein shall have the meanings ascribed such terms in the First Day Declaration.

filed against Scout Media, Inc. ("Scout Media" or "SMI"), and on the date hereof (the "Remaining Debtors' Petition Date" and, together with the SMI Petition Date, the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. Concurrently with the filing of the Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**<u>Relief Requested</u>**

6. By this Motion, the Debtors seek the entry of an order authorizing the payment of Taxes (as defined herein below) and Fees (as defined herein below) in the ordinary course of business, without regard to whether such obligations accrued or arose before or after the Petition Date.

7. The Debtors also request that this Court authorize and direct banks and financial institutions at which the Debtors maintain disbursement and other accounts, at the Debtors' instruction, to receive, honor, process, and pay, to the extent of funds on deposit, any and all checks or electronic funds transfers with respect to the relief requested herein.

8. The Debtors believe that their accrued but unpaid Prepetition Taxes incurred in the ordinary course of business are approximately $129,223.95 as

of the Petition Date, of which approximately $1,789.87 will be come due in the first 30 days of these cases.

## I. The Debtors' Tax Obligations.

9. In the ordinary course of business, the Debtors: (a) incur and/or collect taxes, including franchise, unemployment, income, sales and use, and other miscellaneous taxes in the operation of their businesses (collectively, the "Taxes"); (b) incur business license fees and other similar fees and assessments (collectively, the "Fees") in connection with obtaining the licenses and permits necessary to operate their businesses; and (c) remit such Taxes and Fees to various taxing, licensing, and other governmental authorities (each, an "Authority" and, collectively, the "Authorities"). A list of the Authorities is attached hereto as <u>Exhibit C</u>.[3] The Debtors pay the Taxes and Fees monthly, quarterly, or annually, in each case as required by applicable laws and regulations.

### A. Franchise Taxes.

10. The Debtors pay franchise taxes to certain state Authorities (collectively, the "Franchise Taxes") to operate their businesses in the applicable

---

[3] It is possible that certain of the Debtors' Authorities may have been inadvertently omitted from the list of Authorities. Accordingly, Exhibit C represents a non-exhaustive list of Authorities, and the Debtors reserve the right, pursuant to the terms and conditions of this Motion and without further order from this Court, to amend Exhibit C to add any Authorities, that were omitted therefrom and to request that the relief requested herein apply equally to all such Authorities. In the event the Debtors add any Authorities to Exhibit C, the Debtors will serve this Motion, any order approving same, and a revised version of Exhibit B upon the Authority, the Office of the United States Trustee for the Southern District of New York, counsel to the Lenders, the Bridge Lenders, and any official committee(s) appointed in these chapter 11 cases.

taxing jurisdictions. States assess Franchise taxes in one of the following manners: (a) a minimum tax on all businesses; (b) a tax based on gross receipts, gross margin, or net operating income; or (c) a tax on an entity's total capital/equity or pro forma calculation thereof. The Debtors pay Franchise Taxes in most jurisdictions in which they operate on a quarterly basis, with the requirement to remit quarterly estimated tax payments in some cases. As of the Petition Date, the Debtors estimate that approximately $31,902.44 of Franchise Taxes have accrued and are unpaid.

### B. Unemployment Taxes.

11. Federal and state Authorities impose unemployment taxes for employer-funded unemployment compensation programs (the "Unemployment Taxes"). The Authorities calculate the Unemployment Taxes based upon various tax rates assessed against the amount of wages paid in those jurisdictions in which the Debtors operate. Often, state tax liability with respect to any one employee is capped at a certain amount. The Debtors estimate that, as of the Petition Date, all Unemployment Taxes are current and have been paid. However, out of an abundance of caution, to the extent the Debtors have (i) miscalculated the amounts due, (ii) paid an amount that is less than what is actually owed, or (iii) made payments pre-petition that were rejected, lost, or otherwise not received in full by any Authority, the Debtors request, in their sole discretion, to pay any additional amounts that may come due.

### C. Income Taxes.

12. As a result of their operations throughout the United States,

the Debtors incur income tax liabilities due to the U.S. government and certain U.S. states and cities and/or municipalities ("Income Tax"). These Income Taxes are remitted to the applicable Authorities. The Debtors estimate that approximately $443.43 relating to the pre-petition period will come due in the ordinary course of business during the Debtors' chapter 11 cases. However, out of an abundance of caution, to the extent the Debtors have (i) miscalculated the amounts due, (ii) paid an amount that is less than what is actually owed, or (iii) made payments pre-petition that were rejected, lost, or otherwise not received in full by any Authority, the Debtors request, in their sole discretion, to pay any additional amounts that may come due.

### D. Miscellaneous Taxes.

13. Certain Authorities impose business, partnership, environmental, or other taxes on the Debtors (collectively, the "Miscellaneous Taxes"). The Debtors believe the Miscellaneous Taxes to be a de minimis expense and that the continued payment of Miscellaneous Taxes, including any such taxes due and owing on account of pre-petition Miscellaneous Taxes, are a necessary cost of continuing to operate their businesses. As of the Petition Date, the Debtors estimate that approximately $2,827.72 of Miscellaneous Taxes have accrued and are unpaid.

### E. Business License Fees.

14. Many states and certain local taxing Authorities require the payment of Fees for the Authority to conduct business within their jurisdictions. The

Fees are typically for licenses, annual reports, permits and business licenses, and other similar charges and assessments. In the ordinary course of business, the Debtors pay these Fees, which authorize them to conduct business in certain states. As of the Petition Date, the Debtors estimate that approximately $86,944.74 is unpaid in connection with these Fees.

### F. Sales and Use Taxes.

15. In the ordinary course of business, the Debtors collect and remit to certain Authorities a range of state and local sales taxes from the sale of services to their members (the "Sales Taxes"). The Sales Taxes are assessed at the point of sale, which represent a percentage of the purchase price of the service purchased. Furthermore, the Debtors incur liability for supplies and other goods they purchased in the ordinary course of their business (the "Use Taxes" and, together with the Sales Taxes, the "Sales and Use Taxes"). Use taxes are primarily assessed against a purchaser that has no nexus to the state in which they purchased the supplies or goods. Vendors that sell supplies and goods to these purchasers are not required to charge or remit sales taxes on sales. As a result, purchasers, like the Debtors, are required to report and remit its Use Taxes on the purchased supplies and goods to the states in which the purchasers' conduct their businesses. As of the Petition Date, the Debtors estimate that approximately $5,133.10 of Sales and Use Taxes have accrued and are unpaid.

## II. Payment of the Taxes and Fees is Necessary and Appropriate.

16. The Debtors' payment of Taxes and Fees in the ordinary

course of business is justified because, among other things, certain of the Taxes and Fees are not property of the estate pursuant to Bankruptcy Code section 541(d).  In addition, the Debtors' directors and officers may be held personally liable for the non-payment of certain taxes.  Certain Authorities may take precipitous action against the Debtors' directors and officers for unpaid Taxes, which would distract the Debtors from their efforts to complete a successful reorganization.

    **A.**    **Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.**

    17.    Bankruptcy Code section 541(d) provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  11 U.S.C. § 541(d).

    18.    Some of the Taxes and Fees constitute "trust fund" taxes, which the Debtors are required to collect and/or hold in trust for payment to the Authorities. Courts have held that such taxes are not part of a debtor's estate.  See, e.g., Begier v. Internal Revenue Serv., 496 U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property). To the extent these "trust fund" Taxes are collected, they are not property of the Debtors' estates under Bankruptcy Code section 541(d). The Debtors, therefore, generally do not have an equitable interest in

such funds, and they should be permitted to pay those funds to the Authorities as they become due.

### B. Payment of the Taxes and Fees Will Avoid Unnecessary Distractions in These Chapter 11 Cases.

19. Any regulatory dispute or delinquency that affects the Debtors' ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtors' operations as a whole. Specifically, the Debtors' failure to pay the Taxes and Fees could adversely affect their business operations because, among other things: (a) the Authorities could audit the Debtors or prevent the Debtors from continuing their businesses, which, even if unsuccessful, would unnecessarily divert the Debtors' attention away from the reorganization process; (b) the Authorities could attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (c) certain directors and officers might be subject to personal liability – even if such a failure to pay such Taxes and Fees was not a result of malfeasance on their parts – which would undoubtedly distract those key individuals from their duties related to the Debtors' restructuring. Accordingly, the Debtors must continue to pay the Taxes and Fees as they become due to ensure that their officers and directors remain focused during these chapter 11 cases on operating the businesses and implementing a successful restructuring.

### C. Certain of the Taxes and Fees May Constitute Secured or Priority Claims Entitled to Special Treatment Under the Bankruptcy Code.

20. Payment of certain of the Taxes and Fees likely will give the Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and will save the Debtors the potential interest expense, legal expense, and penalties that otherwise might accrue on the Taxes and Fees during these chapter 11 cases.

21. Claims for some of the Taxes and Fees are or may be priority claims entitled to payment prior to general unsecured creditors. See 11 U.S.C. § 507(a)(8). Moreover, to the extent that the Taxes and Fees are entitled to priority treatment under Bankruptcy Code section 507(a)(8)(b), the governmental units also may attempt to assess interest and penalties. See 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). Thus, the payment of the Taxes and Fees at this time only affects the timing of the payment for the vast majority of the amounts at issue and, therefore, should not unduly prejudice the rights of other creditors.

### D. Payment of the Taxes and Fees is Warranted Under the Doctrine of Necessity.

22. Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. See, e.g., In re Just for Feet, Inc., 242 B.R. 821,

824-25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business). Courts typically rely upon several legal theories rooted in Bankruptcy Code sections 363(b) and 105(a) when authorizing payments of certain prepetition obligations.

23. Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under Bankruptcy Code section 363(b). See, e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to pay prepetition wages); In re James A. Phillips, Inc., 29 B.R. 391, 397 (Bankr. S.D.N.Y. 1983) (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).

24. Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to Bankruptcy Code section 105(a). Bankruptcy Code section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under Bankruptcy Code section 105(a), courts may permit pre-plan payments of prepetition obligations when such payments are essential to the

continued operation of the debtor's business.

25. In addition to the authority granted a debtor in possession under sections 363(b) and 105(a) of the Bankruptcy Code, courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286 (1882). Since Miltenberger, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization, see Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations), including the United States Court of Appeals for the Third Circuit, which recognized the doctrine in In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981).

26. The necessity of payment doctrine is designed to foster the rehabilitation of a debtor in reorganization cases, which courts have recognized is "the paramount policy and goal of Chapter 11." In re Ionosphere Clubs, 98 B.R. at 176; see also In re Just For Feet, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); 2 COLLIER ON BANKRUPTCY ¶ 105.02[4][a] (16th ed. 2012) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

27. Here, the Debtors' payment of the Taxes and Fees is an exercise of sound business judgment and is necessary to enable the Debtors to

effectuate a quick sale of substantially all of their assets. As discussed above, the Debtors must continue to pay the Taxes and Fees to continue operating in certain jurisdictions and to avoid costly distractions during these chapter 11 cases. Indeed, it is possible that Authorities would seek to interfere with the Debtors' businesses if the Taxes and Fees are not paid on a timely basis. Additionally, the relief requested herein merely expedites the treatment and distribution to the Authorities that would otherwise be made at a later date under the proposed plan of reorganization.

### III. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.

28. The Debtors will have sufficient funds to remit the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and debtor in possession financing anticipated to be approved for the Debtors' use in these chapter 11 cases. Also, under the Debtors' existing cash management system, the Debtors readily are able to identify checks or wire transfer requests as relating to an authorized payment in respect of the Taxes. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and the Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

29. To implement the foregoing successfully, the Debtors request

that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

**Notice**

30. The Debtors have provided notice of the Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Consolidated List of Creditors Holding the Thirty (30) Largest Unsecured Claims; (c) counsel to the Lender; (d) the Bridge Lenders (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; and (h) the Authorities. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein on an interim basis, scheduling a final hearing with respect to the Motion, and granting the Debtors such further relief as is just and proper.

Dated: December 9, 2016

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

*/s/ Matthew P. Ward*
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
Morgan L. Patterson (DE Bar No. 5388)
Nicholas T. Verna (DE Bar No. 6082)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: maward@wcsr.com
E-mail: erjohnson@wcsr.com
E-mail: nverna@wcsr.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*