Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson  (DE Bar No. 5024)
Morgan L. Patterson (DE Bar No. 5388)
Nicholas T. Verna (DE Bar No. 6082)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: maward@wcsr.com
E-mail: erjohnson@wcsr.com
E-mail: mpatterson@wcsr.com
E-mail: nverna@wcsr.com

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Scout Media, Inc., et al.,[1] | ) | Case No. 16-13369-MEW |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) ) ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING DEBTORS TO PAY CERTAIN REPETITION CLAIMS
OF CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF**

Scout Media Holdings, Inc., and certain of its affiliates, as debtors and

debtors-in-possession (collectively, the "Debtors"), by and through their undersigned

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number are:  Scout Media, Inc. (1438); Scout Media Holdings, Inc. (1936); FTFS Acquisition, LLC (7230); and Scout.com, LLC (3629).  The location of the Debtors' headquarters and the Debtors' service address is 122 West 26th Street, Fifth Floor, New York, NY 10036.

proposed counsel, hereby move (the "Motion") for the entry of an interim order, substantially in the form attached hereto as Exhibit A (the "Proposed Interim Order"), and a final order, substantially in the form attached hereto as Exhibit B (the "Proposed Final Order"), authorizing, but not directing, the Debtors (i) to pay prepetition claims held by Critical Vendors (as defined herein) in an amount not to exceed $975,000 on an interim basis (the "Interim Critical Vendor Cap") and up to $1,820,000 on a final basis (with respect to both interim and final periods, the "Critical Vendor Cap"); and (ii) granting related relief. In support of the Motion, the Debtors respectfully state as follows:[2]

**Jurisdiction**

1. The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 363, 507(a), 1107(a), and 1108 of title 11 of the United States Code, 11

---

[2] The facts and circumstances supporting this Motion are set forth in the Declaration of Craig Amazeen in Support of Debtors' Chapter 11 Petitions and First Day Motions (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the meanings ascribed such terms in the First Day Declaration.

U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Introduction[3]

4. On December 1, 2016 (the "SMI Petition Date"), an involuntary petition was filed against Scout Media, Inc. ("Scout Media" or "SMI"), and on December 8, 2016 (the "Remaining Debtors' Petition Date" and, together with the SMI Petition Date, the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. Concurrently with the filing of the Motion, the Debtors have requested joint administration of these chapter 11 cases. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

### Relief Requested

5. By this motion, the Debtors seek entry of an interim order, substantially in the form attached hereto as Exhibit A, and a final order, substantially in the form attached hereto as Exhibit B: (a) authorizing, but not directing, the Debtors to pay Critical Vendor Claims in an amount not to exceed the applicable Critical Vendor Cap; and (b) authorizing and directing banks and financial

---

[3] A description of the Debtors' businesses, the reasons for commencing these chapter 11 cases, and the relief sought from this Court to allow for a smooth transition into chapter 11 are set forth in the First Day Declaration.

institutions at which the Debtors maintain disbursement and other accounts, at the Debtors' instruction, to receive, honor, process, and pay, to the extent of funds on deposit, any and all checks or electronic funds transfers in respect of the relief requested herein. In addition, the Debtors request that the Court schedule a final hearing to consider approval of this motion on a final basis.

**Background**

6. The Debtors are a privately held digital sports media company that publishes and distributes content related to the National Football League (the "NFL"), Major League Baseball ("MLB"), the National Basketball Association (the "NBA"), major college football and basketball programs, high school recruiting of basketball and football players, hunting, fishing, outdoors, military, and history, employing approximately thirty-three (33) full-time employees in their Hopkins, Minnesota and New York City offices in the United States.

7. The Debtors provide premium videos, articles, game and event recaps, and other forms of analysis and entertainment (collectively "Content") on webpages dedicated to certain professional sports teams, major college football and basketball teams (and the conferences that they participate in), and leisure activities (collectively, the "Blogs," individually, a "Blog").

**Critical Vendors**

8. In connection with their sports media operations, the Debtors rely on a number of third party vendors to provide them with services used in the operation of their business. While the Debtors believe that many of their vendors

4

provide invaluable services, the Debtors have carefully reviewed and analyzed their books and records, and consulted operations management and purchasing personnel to identify those vendors of goods and services the loss of which could immediately and irreparably harm their business, reduce their enterprise value, and/or significantly impair their going-concern viability.  As part of this process, the Debtors considered numerous factors, including whether:

- a vendor is a sole- or limited-source or high volume supplier;

- alternate vendors exist to provide the same or similar goods or services on equal or better terms;

- the Debtors could continue to operate while transitioning their business to a replacement vendor, taking into account the costs of replacing a vendor (including, pricing, transition expenses, professional fees and lost sales or future revenue) and the degree to which replacement costs exceed the amount of the vendor's prepetition claim;

- a contract exists by which the Debtors could compel the vendor's continued performance on prepetition terms and, if so, whether the Debtors could enforce it in a timely, cost-efficient manner without the undue burden on, or disruption of, the Debtors' business and operations;

- certain specifications and/or requirements unique to the Debtors' operations would prevent obtaining goods or services from alternate sources;

- a vendor's prepetition claim would be entitled to administrative expense priority under Bankruptcy Code section 503(b)(9) to the extent the Debtors received goods within twenty-days of the Petition Date;[4]

---

[4] See 11 U.S.C. § 503(b)(9) ("After notice and a hearing, there shall be allowed administrative expenses . . . including . . . the value of any goods received by the debtor within 20 days

(Continued…)

5

- failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship goods or to provide critical services on a postpetition basis; and

- failure to pay a particular vendor could result in a contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

9. Following this analysis, the Debtors identified certain vendors (the "Critical Vendors," whose claims shall be identified as "Critical Vendor Claims"), to whom the Debtors may owe prepetition amounts as vendors that provide the Debtors with services that are vital to the Debtors' operations.

10. The Critical Vendors primarily consist of approximately 200 vendors who author, create, post, and maintain Content on the Blogs on a daily basis (the "Publishers") and other vendors who provide goods and services that allow Scout to maintain its website and produce Content for the Blogs. Scout Media, in conjunction with the Publishers and other Critical Vendor, produces approximately 11,000 stories and 1,000 premium videos monthly.

11. The Publishers have credential access to the team or area of interest that the Publisher is covering, a wealth of background knowledge regarding their area of specialty, and are tasked with providing new content the Debtors' subscribers and Blog visitors.

---

before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.").

12. The Publishers are located at various locations throughout the country and often reside close to the team that they are covering allowing for access and better Content for the Blogs.

13. The Publishers produce new Content contemporaneously with, or a few hours after a game is played or major news breaks. Accordingly, Publishers are the primarily creators of Content of the Debtors' website, and without the Publishers creating new Content on the Blogs the Debtors would be unable to create web traffic and general advertising revenue.

14. Because of, among other things, the specialized services required to operate the Debtors' business, the Debtors have limited alternatives when going to the market for these necessary services. In many instances, the Critical Vendors are the sole or limited-source providers of Content for its Blogs. In addition, competition for content-providers similar to the Publishers is stringent and the Debtors could not immediately replace any of its and still operate its website

15. The Debtors, therefore, have a limited universe of suppliers of services that can satisfy their operational needs. Replacing the Critical Vendors, especially the Publishers, would result in substantially higher costs for the Debtors and their estates.

16. Furthermore, the Debtors' reliance on the services supplied by their Critical Vendors is continuous and never ceases. At all hours of the day Publishers produce Content for the Debtors, and the Debtors rely on the other Critical Vendors services to maintain their website. Any interruption regarding the

production of new Content, however brief, would disrupt the Debtors' operations and could cause irreparable harm to the Debtors' business, goodwill, employees, customer base, and market share. Such harm would likely far outweigh the cost of payment of the Critical Vendor Claims.

17. Importantly, even though many of the Publishers are party to long-term contracts and the Debtors could compel them to honor their obligations under these contracts, the Debtors are worried that the Publishers' morale and work product will dramatically suffer if their prepetition obligations to the Debtors were not promptly paid.

18. Also, the services that those Critical Vendors, especially the Publishers, supply to the Debtors are so vital to the Debtors' business and operations that any loss of access to, or delay in the delivery of, such goods or services resulting from the Critical Vendors' termination or threatened termination of those contracts (or the delay associated with the Debtors' attempt to enforce the contracts in the event that the Critical Vendors refuse to perform thereunder) would materially, if not irreparably, harm the Debtors' operations.

19. Accordingly, the Debtors seek authority, but not direction, to honor, in an amount not to exceed the applicable Critical Vendor Cap, their prepetition obligations to Critical Vendors where such party may, in the Debtors' reasonable business judgment, be capable of terminating their contract, refuse to perform under their contract, or where the delay associated with the Debtors' attempt

to enforce the applicable contract would threaten the viability of the Debtors' operations.

20. The Publishers are typically paid for their services at the end of the calendar month following the month that services are provided. Accordingly, roughly half of the prepetition amounts owed to the Publishers will become due and payable in the ordinary course of business and consistent with past practice at the end of December for services provided in November, and roughly half of the prepetition amounts owed to the Publishers will become due and payable in the ordinary course of business and consistent with past practice at the end of January for services provided in December. Accordingly, the Debtors are seeking the Court's permission to make the first month's payment through an interim order, and requesting permission to make the next month's payment through a final order.

21. The Debtors' ability to continue their operations following the commencement of these chapter 11 cases will largely depend upon the continued provision of goods and services by the Critical Vendors. The Debtors, therefore, seek to pay all or part of the Critical Vendor Claims to ensure that the Critical Vendors provide the necessary services to the Debtors on a postpetition basis. Specifically, the Debtors request authority, but not direction, to pay[5] Critical Vendors an aggregate amount not to exceed the Critical Vendor Cap.

---

[5] Nothing in this Motion should be construed as a waiver by any of the Debtors of their rights to contest any invoices submitted by a Critical Vendor under applicable law.

22. Subject to the Court's approval, the Debtors request to pay the Critical Vendor Claims only to the extent necessary to preserve its business as a going concern. The Debtors request that if the Critical Vendors accept payment pursuant to the relief requested by this Motion and thereafter do not continue to provide goods or services under the Critical Vendor Agreement or any pre-existing contract, then: (a) the Debtors may then take any and all appropriate steps to cause such Critical Vendors to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Vendors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to re-characterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

**I.  Section 363 of the Bankruptcy Code and the Doctrine of Necessity Permits the Debtors to Preserve the Value of the Estates by Paying Critical Vendor Claims.**

23. Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. See, e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); see also

Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.), 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants). In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in Bankruptcy Code sections 363(b) and 507.

24. Pursuant to Bankruptcy Code sections 1107(a) and 1108, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." Id. Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id. The CoServ court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." Id.

25. Consistent with a debtor's fiduciary duties, courts also have authorized payment of prepetition obligations under Bankruptcy Code section 363(b) where a sound business purpose exists for doing so. See, e.g., In re Ionosphere Clubs, 98 B.R at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b); relief appropriate where payment was needed to "preserve and protect its business and ultimately reorganize, retain its

currently working employees and maintain positive employee morale."); see also Armstrong, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors). Specifically, the business judgment standard requires that a debtor "articulate some business justification, other than the mere appeasement of major creditors." In re Ionosphere Clubs, 98 B.R. at 175.

26. In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on Bankruptcy Code section 105(a). Bankruptcy Code section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under Bankruptcy Code section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business.

27. Critical Vendor Payments are also supported by the "doctrine of necessity." The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor." Official Comm. of Unsecured Creditors of Motor Coach Indus, Int'l v. Motor Coach Indus. Int'l (In re Motor Coach Indus. Int'l), No. 09¬078- SLR, 2009 WL 330993, at n. 5 (D. Del. Feb. 10, 2009) (citing In re Lehigh & New England Ry.

Co., 657 F.2d 570, 581-82 (3d Cir. 1981); In re Just For Feet, Inc., 242 B.R. 821, 824-25 (D. Del. 1999); In re Columbia Gas Sys. Inc., 171 B.R. 189, 192 (Bankr. D. Del. 1994)).

28.  Under the doctrine of necessity courts have also repeatedly recognized that a debtor may honor prepetition obligations where the "debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business." In re Friedman's, Inc., Case No. 09–10161 (CSS), 2011 WL 5975283, at *3 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow payments [of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business"); see also In re Lehigh & New England Ry, Co., 657 F.2d at 581 (holding that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor); In re Penn Cent. Transp. Co., 467 F.2d 100, 102 n. 1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); In re Columbia Gas Sys., Inc., 171 B.R. at 191-92 (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business).

29.  The Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and will benefit the Debtors' estates and

their creditors by allowing the Debtors' business operations to continue without interruption. Indeed, the relief sought in this Motion is essential to keep the Debtors' operations running as a going concern, while the Debtors seek a purchaser for substantially all of the assets of Scout Media, Inc. and Scout.com, LLC. Maintaining the goodwill of the Debtors' Publishers and other Critical Vendors will protect the going concern value of the estates, increase the likelihood that bidders will make offers to purchase Scout Media, Inc.'s and Scout.com, LLC's businesses as a going concern, and maximize the sale value ultimately available to creditors. Further, the Debtors believe that the payment of Critical Vendor payments is necessary to keep their publishers engaged in providing quality Content, and maintain the ability of the Debtors and to preserve the going concern value.

30. It is also important that the Debtors maintain the services of the Publishers, including the Critical Vendors, because delay in payments to Critical Vendors could cause the Debtors to temporarily lose the benefit of the Critical Vendors' services, which would significantly disrupt and impair certain aspects of the Debtors' operations and the ability for a successful sale process to occur.

31. In light of the foregoing, the Debtors respectfully submit that the Creditor Vendor Payments as requested herein is (a) in the best interests of the Debtors, their estates, and their creditors and (b) necessary to prevent immediate and irreparable harm to the Debtors and their estates and to preserve the going concern value.

## II. Request for Authority for Banks to Honor and Pay Checks Issued to Pay Critical Vendor Claims.

32. In addition, by this Motion, the Debtors request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to the Critical Vendor Payments, regardless of whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of amounts or programs discussed herein. Accordingly, the Debtors believe that checks should be honored.

### The Requirements of Bankruptcy Rule 6003 Have Been Satisfied

33. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. See In re Ames Dep't Stores, 115 B.R. 34, 36 n. 2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

34.     As described above, payment of prepetition amounts owed for Critical Vendor Payments are integral to the Debtors' continued operations because they are necessary to maintain the smooth operations of the Debtors' businesses in chapter 11.  Accordingly, the Debtors submit they have satisfied Bankruptcy Rule 6003 to support immediate payment of their obligations under their contracts with the Critical Vendors.

### **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

35.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### **Notice**

36.     The Debtors have provided notice of the Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Consolidated List of Creditors Holding the Thirty (30) Largest Unsecured Claims; (c) counsel to the Lender; (d) the Bridge Lenders; (e) the Internal Revenue Service; and (f) the Securities and Exchange Commission.

### **Reservation of Rights**

37.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. Likewise, if this Court grants

the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request that the Court (a) enter the Interim Order, substantially in the form attached hereto as Exhibit A, and the Final Order, substantially in the form attached hereto as Exhibit B, and (b) grant the Debtors such further relief as is just and proper.

Dated: December 9, 2016

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

*/s/ Ericka F. Johnson*
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
Morgan L. Patterson (DE Bar No. 5388)
Nicholas T. Verna (DE Bar No. 6082)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: maward@wcsr.com
E-mail: erjohnson@wcsr.com
E-mail: mpatterson@wcsr.com
E-mail: nverna@wcsr.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*