**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SCOUT MEDIA, INC., et al.,[1] | ) Case No. 16-13369-MEW |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Related Doc. No. 18** |

**SUPPLEMENTAL DECLARATION OF CRAIG AMAZEEN
IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY CERTAIN
PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) GRANTING
RELATED RELIEF**

I, Craig Amazeen, hereby declare under penalty of perjury:

1. I am the President of Scout Media Holdings, Inc. ("SMHI"), Scout Media, Inc. ("SMI"), FTFS Acquisition, LLC ("FTFSA"), and Scout.com, LLC ("S.com" and together with SMHI, SMI, and FTFSA, the "Debtors"). In this capacity, I am familiar with the Debtors' day-to-day operations, businesses, financial affairs, and books and records. I have been the President of Scout since July 2016. I have twenty-one years of senior leadership experience in the sports industry. Prior to joining the Debtors, I served as SVP with the Sacramento Kings (NBA), leading all content aggregating departments, including broadcast, digital, marketing, creative services, and brand development. Prior to the Kings, I served in leadership positions with the Arizona

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number are: Scout Media Holdings, Inc. (1936), Scout Media, Inc. (1438), FTFS Acquisition, LLC (7230), and Scout.com, LLC (3269). The location of the Debtors' headquarters and the Debtors' service address is 122 West 26th Street, Fifth Floor, New York, NY 10036.

Cardinals (NFL) and the Phoenix Coyotes (NHL). I am a ten-time Emmy and eight-time Gold Advertising (Addy) Award winner.

2. On December 1, 2016 (the "SMI Petition Date"), an involuntary petition was filed against SMI, and on December 8, 2016 (the "Remaining Debtors' Petition Date" and, together with the SMI Petition Date, the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3. I submit this declaration (the "Declaration") in support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Certain Prepetition Claims of Critical Vendors and (II) Granting Related Relief [Docket No. 18] (the "Critical Vendor Motion").

4. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, information supplied to me by members of the Debtors' management team and the Debtors' advisors, or my opinion based on my experience with and knowledge of Debtors' operations. I am authorized to submit this Declaration on behalf of the Debtors, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

5. The Debtors are a privately held digital sports media company that publishes and distributes content related to the National Football League (the "NFL"), Major League Baseball ("MLB"), the National Basketball Association (the "NBA"), major college football and basketball programs, high school recruiting of basketball and football players, hunting, fishing, military, and history, employing approximately thirty-three (33) full-time employees all over the country with our main headquarters in Hopkins, Minnesota and New York City in the United States.

6. The Debtors provide premium videos, reports, articles, columns, game and event recaps, and other forms of analysis and entertainment (collectively "Content") on webpages dedicated to certain professional sports teams, major college football and basketball teams (and the conferences that they participate in), and participatory activities like fishing and hunting.

7. In connection with their sports media operations, the Debtors rely on a number of third party vendors to provide them with services used in the operation of their business. While many of the Debtors' vendors provide invaluable services, I believe that the loss of certain of the vendors (the "Critical Vendors") could immediately and irreparably harm the Debtors' business, reduce their enterprise value, and/or significantly impair their going-concern viability.

8. Specifically, these Critical Vendors include, but are not limited to, the following: (i) web hosting providers; (ii) production service providers; (iii) labor augmentation providers; (iv) network services; (v) server lessors and server maintenance service providers; (vi) website image hosting and content

providers; (vii) IT desktop support, including database administration and backup services; (viii) video hosting and production services; and (ix) engineering team member services.  Each of these Critical Vendors is an integral part of the Debtors ability to keep the Content running and of premium quality.

9. The majority of the Critical Vendors is made up of the Debtors' publishers (the "Publishers").  The Debtors have a network of over 150 Publishers that produce Content, including approximately 10,000 stories and 3,000 premium videos monthly.  The Publishers are unique individuals and small businesses that have credentialed access to the team or area of interest about which they publish and produce content.  They are in a position to have exclusive information or knowledge with respect to their team or topic.  Accordingly, lack of payment to the Publishers would cause irreparable harm to the Debtors, as the Debtors would not be able to produce the Content which is the basis of their business.

10. While each of the Publishers is currently under contract to provide the Content, I believe making payment to the Publishers is still necessary given the circumstances.  First, any disruption in providing Content would be damaging to the Debtors despite any eventual order from the Court requiring performance under the contract.  Second, Content is subjective and a disgruntled Publisher may not provide quality Content which would also cause irreparable harm to the Debtors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: December 19, 2016        /s/ Craig Amazeen
                                Craig Amazeen